UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>PLAINTIFF<br><br>VS.<br><br>SAMUEL PETER NICHOLAS,<br>DEFENDANT | CASE NO. CR 1-02-143<br>(DLOTT, J.)<br>(HOGAN, M.J.) |

### ORDER

On March 25, 2005, this Court conducted a preliminary examination on a supervised release violation filed by Lorraine Cooper, United States Probation Officer. Defendant had been previously indicted and convicted of Making a False Statement to the Federal Aviation Administration (FAA), a violation of 18 U.S.C., Section 1001. Defendant's sentence included a three-year period of supervised release, a specific condition of which was that he "not commit another federal, state or local crime." The sentence was rendered in April, 2003. The period of supervised release began on the date Defendant was released from the Bureau of Prisons in August, 2003. The supervised release violation alleges that Defendant committed another federal criminal act by making another False Statement in September, 2004 by answering in the negative a question whether Defendant had ever in his life been "diagnosed with, had or presently have a mental disorder of any sort on another F.A.A. application. The instructions make it clear that if such a mental condition was previously reported, the applicant is to note "previously reported - no change" if, in fact, there had been no change. The supervised release violation also alleges that Defendant's negative response to an additional part of the same question dealing with hospital admissions constituted an additional false statement. (See Exhibit 2, the application.)

The supervised release violation asserts that the question (Question No. 18) was answered falsely because Defendant had been diagnosed in 1998 at Good Samaritan Hospital with a bipolar disorder and had been admitted to that same hospital in October, 1998.

The supervised release violation additionally alleges that Defendant answered Question

No. 19 falsely because he failed to make an affirmative response to that question, which dealt with visits to health care professionals within a previous three-year period, when he was treated from June, 2002 to December, 2002 for chronic pain by Dr. Grogan, a member of the Daugherty Medical Group in Cincinnati, Ohio. (See Exhibit 3)

The sole witness at the hearing was Lorraine Cooper, United States Probation Officer, who presented Exhibits 3 and 4, the first of which was a page from the pre-sentence investigation report from Defendant's original case, wherein the investigator refers to a contact with Dr. Grogan, who reported that Defendant had been a patient in his care from June to December, 2002 and that Defendant had been treated for chronic pain. In addition, the document indicates that Defendant, in relating his medical history, had told Dr. Grogan that he had a history of bipolar disorder. The second exhibit is a Mental Health Evaluation, completed by Neal W. Dunsieth, Jr., M.D., a psychiatrist, in connection with Defendant's pre-sentence examination. That evaluation, under date of March 10, 2003, mentions a hospitalization for "a few days" at Good Samaritan Hospital and a diagnosis of bipolar disorder, apparently made at another facility. It is not clear, however, whether Plaintiff was treated at this other facility, called simply "Franciscan," nor is it clear that any diagnosis was communicated to Defendant while or after Defendant was there. Lastly, the Mental Health Evaluation indicates that Plaintiff, while treating at Wyoming Family Practice for pain management in 2001, received a referral to a Dr. Wulsin, a psychiatrist, because Defendant's medical records contained a diagnosis of bipolar disorder.

Without presenting any witnesses other than Ms. Cooper, the information obtained from her investigation is admittedly hearsay. In addition, we can also say that we have only inferences to make regarding the physicians' communication of their findings to Defendant. However, it appears highly likely that Defendant knew when and where he received medical treatment and that he knew the difference between voluntary hospitalization and an emergency psychiatric hold. It also appears highly likely that Defendant was informed and was, accordingly, aware of the fact that Dr. Dunsieth had diagnosed him with a psychiatric disorder known as "pseudologica fantastica" and had reported same to the sentencing court in March, 2003.

Although Defendant did not testify, his able counsel was able to demonstrate that the F.A.A. license was never issued and that a possible explanation for Defendant's filling out the application in the manner in which he did was because of an assumption that he need not again

report what was previously reported in conjunction with a previous application.

     Defendant has a tenth grade education, but Dr. Dunsieth estimated his intelligence in the "above average range." The instructions for the proper completion of the F.A.A. application are clear that under each item under the category of medical history, the applicant is to check "yes" or "no," and that the applicant must answer in the affirmative if he presently has or had ever been diagnosed with any mental disorder. Defendant checked the "no" box under Questions No. 18 and 19. Those answers was not only false, but very likely knowingly false. It is, quite frankly, unbelievable that a person previously indicted for making a false statement would do it again when he is aware that both the F.A.A. and his probation officer are watching. A more plausible explanation for such behavior than inadvertence or misunderstanding the directions for filling out the form is simply the mental condition from which he suffers. It would appear to this Court that Defendant's representations of being a CIA operative and a physician, as described by Dr. Dunsieth, are consistent with the alleged operative behavior in this instance. Therefore, probable cause is found that justifies the continuance of this case to a final hearing before the sentencing judge.

April 1, 2005

Timothy S. Hogan
United States Magistrate Judge